## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

JASON LARY, JR.,                                                    CASE NO.:

        Plaintiff,

                                                          **PLAINTIFF DEMANDS**

    v.                                                                     **A TRIAL BY JURY**

TRINET HR, III, INC., ELEVATE SPORTS
VENTURES INC., and INTER MIAMI CF, LLC.,

        Defendants.

_____/

## COMPLAINT

    Plaintiff, Jason Lary, Jr. (hereinafter referred to as "Plaintiff" and/or "LARY"), by and through his counsel, Derek Smith Law Group, PLLC, hereby complains of the Defendant TRINET HR, III, INC., ELEVATE SPORTS VENTURES INC., and INTER MIAMI CF, LLC., (hereinafter collectively referred to as "Defendants" and/or "IMC"), and alleges as follows:

## NATURE OF CASE

1. This employment discrimination case is about three employers who subjected their Black/African American employee to relentless harassment, discrimination and retaliation, ultimately culminating in the unlawful termination of the employee.

2. Plaintiff LARY brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.* ("**Title VII**") and Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("**Section 1981**").

3. Mr. LARY seeks monetary relief to redress Defendants' unlawful employment practices in violation of Title VII and Section 1981. Additionally, this action seeks to redress Defendants' deprivation of Mr. LARY's personal dignity and his civil right to pursue equal employment opportunities.

4. Throughout the course of his employment, Mr. LARY found himself at the center of a hostile work environment as part of a scheme orchestrated by Defendants to unlawfully eliminate Mr. LARY from his position.

5. Defendants' unrelenting discrimination against Plaintiff culminated with his unlawful termination.

6. At bottom, Defendants are liable for subjecting Mr. LARY to a work environment infested with relentless discrimination and for wrongfully terminating because of his race/color.

**JURISDICTION AND VENUE**

7. This is an action for monetary damages and all other appropriate relief as deemed by the court, pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981 ("Section 1981").

8. This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding deprivation of Plaintiff's civil rights under Title VII and Section 1981.

9. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) based upon the fact Defendants were located in this judicial district, and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district. Plaintiff was employed by Defendant within Miami-Dade County, Florida. Additionally, the events took place in Miami-Dade County, Florida.

**PROCEDURAL PREREQUISITES**

10. Plaintiff has complied with all statutory prerequisites to file this action.

11. On or about July 2, 2020, Plaintiff dual-filed charges with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") against Defendant as set forth herein, Charge number 15D-2020-01063.

12. An EEOC filing automatically operates as a dual FCHR filing.

13. On or about January 22, 2021, the EEOC issued a right to sue letter, and this action is being commenced.

14. This action is being commenced within ninety (90) days of receipt of the EEOC Right to Sue Letter.

15. This action is being commenced more than one hundred eighty (180) days since the inception of Plaintiff's admirative action against the Defendants.

## **PARTIES**

16. At all material times, Plaintiff LARY is an individual Black/African American male who is a resident of the State of Georgia and resides in Fulton County.

17. At all times material, Defendant TRINET HR, III, INC., is a Foreign Profit Corporation existing by the virtues and laws of the State of California.

18. At all times material, Defendant ELEVATE SPORTS VENTURE INC., is a Foreign Limited Liability Company existing by the virtues and laws of the State of Delaware.

19. At all times material, Defendant INTER MIAMI CF, LLC., is a Foreign Limited Liability Company existing by the virtues and laws of the State of Delaware.

20. At all times material, Defendant TRINET HR, III, INC., Defendant ELEVATE SPORTS VENTURE INC., and Defendant INTERMIAMI CF, LLC (hereinafter jointly referred to as "IMC"), did and continue to do business as "Inter Miami CF."

21. At all times material, Defendants IMC was Claimant LARY's joint and/or sole employer.

22. At all material times, Defendants IMC employed ROY TEWELL (hereinafter referred to as "TEWELL") as Senior Director of Ticket Sales.

23. At all material times, TEWELL held supervisory authority over Plaintiff, controlling various tangible aspects of his employment, including but not limited to the power to hire and fire Mr. LARY.

24. At all material times, Defendant IMC employed ROB ZEUR (hereinafter referred to as "ZEUR") as Vice President of Ticket Sales and Service.

25. At all material times, ZEUR held supervisory authority over Plaintiff, controlling various tangible aspects of his employment, including but not limited to the power to hire and fire Mr. LARY.

26. At all material times, Defendants IMC employed JAKE GOODMAN as Manager of Premium Ticket Sales (manager of ticket sales, not premium tickets).

**FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**

27. On or around November 1, 2019, Defendants IMC hired Plaintiff LARY as a "Manager, Premium Sales."

28. Prior to the inception of his employment with IMC, TEWELL met with Plaintiff LARY to conduct a preemployment interview. During the course of the interview, TEWELL advised Mr. LARY that he would be charge of managing a team of four (4) sales associates specifically focused on the development of both the Fort Lauderdale Stadium and for Miami Freedom Park, once Defendant IMC received approval for construction/development. (Zeur said that Miami Freedom Park wasn't officially approved

but was a "done deal" during my interview. This along with the $35,000 bonus were the only reasons I accepted job over other teams in pursuit."

29. Despite the clearly articulated role and discussion of his responsibilities therein, on the first week of Plaintiff LARY's employment, his duties dramatically shifted. TEWELL advised Mr. LARY that he would have to take charge in selling all available suites on his own. To that end, Mr. LARY would no longer be responsible for the supervision of subordinates, but instead would be a part of a one-man sales team.

30. Furthermore, the proposed sales position was instead given to GOODMAN, an individual White/Caucasian male, who already had a team of ten (10) subordinates.

31. Additionally, due to the change in duties Mr. LARY was assigned to perform, Mr. LARY requested an update to his compensation structure. TEWELL promised to provide an updated compensation structure to Plaintiff, but Plaintiff was required to start his employment with Defendants before his compensation structure was fully established.

32. Despite the obvious red flags and his own frustrations, Plaintiff LARY continued to strive to ensure he met all expectations of his Directors, focusing his efforts on hitting each benchmark and sales goal presented.

33. Within the first few weeks of his employment, Mr. LARY was again approached regarding the sales team dynamics. Despite not being provided support in his own division, Mr. LARY was asked to assist GOODMAN with managing his team. Mr. LARY, being a team player, readily agreed.

34. Further, during the first few months of his employment through his termination, Plaintiff LARY routinely asked TEWELL and ZEUR for his compensation structure. In response,

Defendants, by and through their agents, assured Plaintiff that his compensation structure was forthcoming and would be produced shortly.

35. In or around the winter of 2019-2020, after the suites were sold out, Plaintiff LARY was given an additional job function of servicing suites. As a result, Mr. LARY was the *sole* point of contact for all available suites, twenty (20) units in total. Additionally, Mr. LARY's role would include all phases of client interaction, including but not limited to, the collection of payment, communication with the buyers and/or prospective buyers, negotiation of contracts, and engaging with the buyers at all events on site.

36. Even still, Plaintiff LARY's department received no additional help, requiring him to serve as the lead on multiple job functions at a time.

37. On one occasion, Mr. LARY was advised that he needed to hire two (2) employees to work for him in Fort Lauderdale.

38. Excited by the opportunity to receive the much-welcomed support, Mr. LARY posted the job on Defendants IMC's website (and conducted multiple interviews for the position). Despite the positive progress, no less than a month after the posting was up, it was removed by IMC., despite the failure to hire for the open positions.

39. Frustrated by the changes, Plaintiff brought his concerns regarding his compensation structure that had yet to be approved to the Director of Membership Services, Lauren Voorhies (hereinafter referred to as "Ms. VOORHIES"). VOORHIES advised Mr. LARY that he had to speak with TEWELL regarding the pending compensation plan.

40. Once more, Mr. LARY attempted numerous times to discuss memorializing his compensation package with TEWELL and ZUER to no avail, including up until his termination from Defendants.

41. ZUER and TEWELL continued to regularly make excuses as to their unreasonable delays regarding Plaintiff LARY's compensation structure, insisting that IMC's CFO Jurgen Mainka (hereinafter referred to as "MAINKA") was to blame, along with COO Paul McDonough.

42. During Mr. LARY's final attempt to contact ZUER and TEWELL, TEWELL again changed his reasoning, stating that Plaintiff LARY's commission was not signed off on because ZUER did not refer to TEWELL's text messages and phone calls concerning the commission/bonus package.

43. Despite the constant and unrelenting run around by Defendants' management team, it was open and obvious that Plaintiff was the only employee to not have his commission plan signed and in effect by IMC. In fact, white/Caucasian employees who were hired by Defendants IMC after Mr. LARY had their commission forms signed and were paid said commissions.

44. Mr. LARY gave up the opportunities to work for several other teams, which he turned down to accept his offer with IMC. Notably, a motivating factor for Mr. LARY to accept the position was the promised thirty-five thousand dollars in sellout bonuses.

45. In addition to disparate support staff assignments, the whimsical shifting of job duties, and the ongoing salary discrepancies, Defendant IMC's managers regularly scheduled meetings and events of which Plaintiff LARY was never informed of nor invited to, further targeting Plaintiff for isolation. These exclusions included not being invited to outings with the company.

46. Furthermore, Mr. LARY was informed by Defendants' Manager of Premium Services, Aidan Weise (hereinafter referred to as "WIESE"), that GOODMAN would frequently degrade and speak negatively about Mr. LARY at these meetings and outings.

47. In or around March 2020, Plaintiff was approached by one of his female colleagues, Ms. Jessica Crosson (hereinafter referred to as "Ms. CROSSON"). Ms. CROSSON reported to Plaintiff that GOODMAN was sexually harassing her by way of sexually-hostile comments and conduct that she found to be offensive.

48. In or around early April 2020, deeply concerned about the events described by Ms. Crosson and aware of his obligations as a manager, Plaintiff contacted TEWELL to report GOODMAN  or sexual harassment and his inappropriate behavior in relation to Ms. GOODMAN (Ms. Crosson).

49. Although Plaintiff LARY brought Ms. CROSSON's concerns to TEWELL, Respondent failed to investigate Ms. CROSSON's complaints of sexual harassment by Mr. GOODMAN. In fact, Respondents failed to even contact Ms. CROSSON regarding her sexual harassment complaint.

50. In fact, Ms. CROSSON informed Plaintiff LARY that she herself brought the complaint to TEWELL, again receiving no follow up or indication otherwise that her complaint was being investigated. TEWELL refused to act and resolve the ongoing harassment, instead brushing it off as trivial banter and insisting that Ms. CROSSON try speaking with GOODMAN.

51. Rather than take prompt and immediate corrective action to ensure the unlawful harassment discrimination ceased, Defendants promptly retaliated against Plaintiff LARY for speaking out on behalf of Ms. CROSSON.

52. No more than one week following Plaintiff LARY's efforts in bringing the sexual harassment complaint to TEWELL's attention, Defendants IMC unlawfully and wrongfully terminated Mr. LARY.

53. On or around April 9, 2020, Respondents IMC wrongfully and unlawfully terminated Mr. LARY because of his race/color and in retaliation for his opposition to Respondents unlawful and discriminatory conduct.

54. As a result of his termination, Plaintiff was unemployed for four months and was required to relocate to Atlanta, Georgia for a job opportunity.

55. Furthermore, at the time of his termination, Plaintiff was made aware of the status of his fellow managers employed by Defendants IMC. Of the nine managers on staff, the seven Caucasian/White employees were retained, while solely Mr. LARY and another African American/Black manager were terminated.

56. The aforementioned facts are just some of the examples of the discrimination Mr. LARY suffered.  Additionally, Mr. LARY claims a continuous practice of discrimination and continuing violations and makes all claims herein under the continuing violations doctrine.

57. Defendants have established a pattern and practice of not only discrimination but also retaliation.

58. Upon information and belief, the discrimination and retaliation will continue after the date of this complaint and Plaintiff hereby makes a claim for all continuing future harassment and retaliation.

59. As a result of the acts and conduct complained herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits, and other compensation which such employment entails. Plaintiff has also suffered future pecuniary

losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

60. Mr. LARY has further experienced severe emotional and physical distress. Mr. LARY suffers from increased stress and anxiety.  Similarly, Mr. LARY has trouble sleeping as a result of Defendants' conduct.

61. As a result of Defendants' actions, Plaintiff LARY felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

62. As Defendants' conduct has been malicious, willful, extreme and outrageous, and with full knowledge of the law, Plaintiff respectfully seeks all available damages including but not limited to emotional distress, loss wages, back pay, front pay, statutory damages, attorney's fees, costs, interest and punitive damages from all Defendants jointly and severally.

63. Defendants' actions and conduct were intentional and intended to harm Plaintiff LARY.

64. Plaintiff LARY has presented factual allegations that would permit any reasonable jury to award damages.

65. At bottom, Defendants are liable for their reckless disregard for Plaintiff LARY's personal dignity and his civil right to pursue equal employment opportunity.

66. Plaintiff LARY has suffered damages as a result of Defendants' unlawful employment practices.

## COUNT ONE
### *Race/Color Discrimination (Disparate Treatment) in Violation of the TITLE VII*

67. Plaintiff realleges and incorporates by reference each allegation contained in the previous paragraphs, and further alleges as follows.

68. Title VII states in relevant parts as follows: "§ 2000e-2. *[Section 703]* (a) Employer practices It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

69. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e *et seq.*, by discriminating against Plaintiff because of his race.

70. Defendants IMC's Employees/Managers/Supervisors TEWELL and ZEUR treated Plaintiff differently than his peers based on his race/color, including denying Plaintiff his promised sales team to manage, unilaterally changing his job duties, and unreasonably delaying the approval of Plaintiff's commission structure meant to properly compensate him for the altered position description, while favoring Plaintiff's White/Caucasian peers, including GOODMAN, as alleged and set forth above.

71. The discriminatory and disparate treatment of Plaintiff included, but was not limited to, denying Plaintiff his promised role of manager, unilaterally changing his job duties, and unreasonably delaying the approval of Plaintiff's commission structure.

72. The discriminatory actions of Defendant against Plaintiff, as described and set forth above, constitute an adverse employment action for purposes of Title VII.  In subjecting Plaintiff to adverse employment action on the basis of his race, Defendant intentionally

discriminated against Plaintiff with respect to the compensation, terms, conditions, or privileges of his employment.

73. Mr. LARY was subject to discriminatory conduct and comments during his employment with IMC and this conduct was directed to and perpetuated upon Plaintiff because of his race.

74. The Defendants' discharge of Plaintiff was, in whole or in part, because he was Black/African American.

75. At all times relevant, Defendants IMC engaged in discriminatory practices which resulted in Plaintiff being subjected to a discriminatory hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., as amended.

76. Defendants treated Plaintiff less favorably than similarly situated employees outside the protected class.

77. As a result of Defendants' violations of The Civil Rights Act of 1964, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, mental pain and suffering; humiliation; emotional distress; diminishment of career opportunities; harm to business reputation; loss of self-esteem; disruption to his family life; and other harm, pain and suffering, both tangible and intangible.

78. Conduct of Defendants and/or their agents deprived Plaintiff of his statutory rights guaranteed under Title VII.

79. Plaintiff further requests that his attorney's fees and costs be awarded as permitted by law.

80. Plaintiff LARY has been damaged by the illegal conduct of Defendants

**COUNT TWO**
*Race/Color Discrimination (Hostile Work Environment)*
*in Violation of the Title VII*

81. Plaintiff realleges and incorporates by reference each allegation contained in the previous paragraphs, and further alleges as follows.

82. The Civil Rights Act of 1964 prohibits inappropriate conduct in the workplace which leaves any person feeling harassed or discriminated against, due to his or her gender, age, religion, national origin or race.

83. Here, Defendants' conduct occurred because of Plaintiff's legally protected characteristic, and the conduct was severe or pervasive enough to make a reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating, hostile or abusive.

84. Defendants IMC's Employees/Managers/Supervisors TEWELL and ZEUR harassed Plaintiff based on his race, including denying Plaintiff his promised sales team to manage, unilaterally changing his job duties, and unreasonably delaying the approval of Plaintiff's commission structure meant to properly compensate him for the altered position description, while favoring Plaintiff's White/Caucasian peers, including GOODMAN, as alleged and set forth above.

85. The harassment of Plaintiff included, but was not limited to, denying Plaintiff his promised role of manager, unilaterally changing his job duties, and unreasonably delaying the approval of Plaintiff's commission structure.

86. The harassing actions of Defendants against Plaintiff, as described and set forth above, constitute an adverse employment action for purposes of Title VII.  In subjecting Plaintiff to adverse employment action on the basis of his race, Defendants intentionally harassed Plaintiff with respect to the compensation, terms, conditions, or privileges of his employment.

87. The harassing conduct was directly connected to Mr. LARY's race.

88. When Mr. LARY voiced his objections to this harassing and discriminatory treatment, not only did Defendants fail to address his concerns, but they continued the pattern of discrimination and harassment by further denying Plaintiff his role as Manager and unreasonably delaying the approval of Plaintiff's compensation structure.

89. Plaintiff did not welcome Defendants' harassing conduct or comments.

90. Defendants abused their supervisory authority over Plaintiff by creating a hostile work environment. A reasonable person subjected to Mr. LARY's working environment would believe Defendants' conduct was severe or pervasive enough to have altered the terms and conditions of employment and render the working environment intimidating, hostile or abusive.

91. As a result of Defendants' violations of The Civil Right Act of 1964, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, mental pain and suffering; humiliation; emotional distress; diminishment of career opportunities; harm to business reputation; loss of self-esteem; disruption to his family life; and other harm, pain and suffering, both tangible and intangible.

92. Conduct of Defendants and/or their agents deprived Plaintiff of his statutory rights guaranteed under Title VII.

93. Plaintiff further requests that his attorney's fees and costs be awarded as permitted by law.

94. Plaintiff LARY has been damaged by the illegal conduct of Defendants.

**COUNT THREE**
*Retaliation in Violation of the Title VII*

14

95. Plaintiff realleges and incorporates by reference each allegation contained in the previous paragraphs, and further alleges as follows.

96. Title VII prohibits employment discrimination against an individual for opposing or complaining about unlawful discrimination and/or harssment.

97. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because she has opposed any practice made an unlawful employment practice by this subchapter, or because she has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

98. Plaintiff opposed Mr. Goodman's discriminatory treatment by complaining to Defendants' management team about the unlawful sexual harassment by Mr. Goodman.

99. At all times relevant, Plaintiff acted in good faith and with the objective and subjective belief that violations of Title VII by Defendants IMC's employees had occurred.

100. At all times relevant, the unlawful discrimination by Defendants' employees against Plaintiff in the terms and conditions of his employment because he opposed a practice made unlawful by Title VII which would not have occurred but for that opposition.

101. At all material times, the employer exhibiting discriminatory conduct against Plaintiff possessed the authority to affect the terms, conditions, and privileges of Plaintiff's employment with the Defendants.

102. Following Plaintiff's opposition to Mr. Goodman's conduct and his complaint to Defendants, the hostility increased dramatically.

103. Defendants IMC's Employees/Managers/Supervisors TEWELL and ZEUR retaliated against Plaintiff, including by continuing to deny Plaintiff his promised sales team to manage, unreasonably delaying the approval of Plaintiff's commission structure, and ultimately terminating him after he complained of and reported GOODMAN's sexual harassment of coworker CROSSON.

104. Plaintiff opposed discriminatory conduct by Defendants which is prohibited by Title VII when he complained to Defendants about GOODMAN's sexual harassment of a coworker as described and set forth above.

105. Plaintiff's complaints involved Defendants' unlawful and discriminatory actions and therefore constituted protected activity under Title VII.

106. Mr. LARY complained of fellow Manager GOODMAN's sexual harassment of an employee.

107. At all times relevant, Mr. LARY acted in good faith and with the objective and subjective belief that Defendants IMC's employees violated of the law and his coworker's protected rights.

108. After expressing his opposition to the unlawful discriminatory conduct, Defendants retaliated against Plaintiff by among other things, wrongfully and unlawfully terminating Plaintiff's employment.

109. The adverse employment actions by Defendants were the result of Plaintiff's opposition to the discriminatory conduct to which his coworker was subjected, in violation of Title VII.

110. The discriminatory and disparate treatment of Plaintiff included, but was not limited to, denying Plaintiff his promised role of manager, unreasonably delaying the approval of Plaintiff's commission structure, and wrongfully terminating his employment within one week of his report of discriminatory conduct in violation of Title VII.

111. The discriminatory actions of Defendants against Plaintiff, as described and set forth above, constitute an adverse employment action for purposes of Title VII.  In subjecting Plaintiff to adverse employment action on the basis of his race, Defendants intentionally discriminated against Plaintiff with respect to the compensation, terms, conditions, or privileges of his employment.

112. As a result of Defendants' violations of The Civil Right Act of 1964, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, mental pain and suffering; humiliation; emotional distress; diminishment of career opportunities; harm to business reputation; loss of self-esteem; disruption to his family life; and other harm, pain and suffering, both tangible and intangible.

113. Conduct of Defendants and/or their agents deprived Plaintiff of his statutory rights guaranteed under federal law.

114. Plaintiff further requests that his attorney's fees and costs be awarded as permitted by law.

115. Plaintiff LARY has been damaged by the illegal conduct of Defendants.

## <u>COUNT FOUR</u>
### *Race/Color Discrimination in violation of 42 U.S.C. § 1981*

116. Plaintiff realleges and incorporates by reference each allegation contained in the previous paragraphs, and further alleges as follows.

17

117. 42 U.S. Code § 1981 - Equal rights under the law states provides:

    (a)  All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

    (b)  For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

    (c)  The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

118. Defendants engaged in unlawful employment practices that violated 42 U.S.C §1981, by discriminating against Plaintiff on account of Plaintiff being of Black race.

119. Defendants violated Section 1981 by intentionally discriminating against Plaintiff in a serious tangible way with respect to compensation, terms, conditions or privileges of his employment.

120. Plaintiff's race characteristics were a determinative or motivating factor in Defendants' employment actions.

121. Defendants cannot show any legitimate nondiscriminatory reason for their employment practices and any reasons proffered by the Defendants for their actions against Plaintiff are pretextual and can readily be disbelieved.

122. Plaintiff's protected status played a motivating part in the Defendants' decisions even if other factors may also have motivated Defendants' actions against Plaintiff.

123. Defendants' harassment and highly offensive conduct to Plaintiff on account of Plaintiff's race adversely affected the terms, conditions, and privileges of Plaintiff's employment.

124. Defendants' conduct was adequately severe and pervasive so as to alter the work environment and create an abusive and hostile work environment for Plaintiff.

125. Defendants acted upon a continuing course of conduct.

126. Defendants enforced a purposefully discriminatory pattern and practice of depriving Plaintiff, a Black individual, of the equal rights afforded to him, in violation of 42 U.S.C. §1981.

127. Defendants violated Section 1981, and Plaintiff suffered numerous damages as a result.

128. Plaintiff makes his claim against Defendants under all of the applicable paragraphs of 42 U.S. Code § 1981.

129. As a result of Defendants' violation of Section 1981, Plaintiff has been denied the enjoyment of all benefits, privileges, terms, and conditions of Plaintiff's contractual relationship, which provided substantial compensation and benefits to the Plaintiff.

130. As alleged above, Defendants acted with malice or reckless indifference to the rights of the Plaintiff, thereby entitling Plaintiff to an award of punitive damages.

131. As a result of Defendants' violations of Section 1981, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

## COUNT FIVE
### *Retaliation in violation of 42 U.S.C. § 1981*

131. Plaintiff realleges and incorporates by reference each allegation contained in the previous paragraphs, and further alleges as follows

132. Plaintiff, as an individual of Black race, was discriminated against by Defendants on account of his race, in violation of Section 1981.

133. Plaintiff engaged in protected activity by complaining of the illegal conduct to the Defendants and opposing Defendants' unlawful actions.

134. Plaintiff was subjected to materially adverse actions at the time or within a relatively short time after the protected conduct took place, including unreasonable delays in his commission structure and his ultimate unlawful termination.

135. There was a causal connection between the Defendants' materially adverse actions and Plaintiff's protected activity.

136. The Defendants' actions were "materially adverse" because they were serious enough to discourage a reasonable worker from engaging in protected activity.

137. As a result of Defendants' violation of Section 1981, Plaintiff has been denied the enjoyment of all benefits, privileges, terms, and conditions of Plaintiff's contractual relationship, which provided substantial compensation and benefits to the Plaintiff.

138. As a result of the Defendants' violations of Section 1981, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

20

139. As alleged above, Defendants acted with malice or reckless indifference to the rights of the Plaintiff, thereby entitling Plaintiff to an award of punitive damages.

140. Conduct of Defendants and/or its agents deprived Plaintiff of his statutory rights guaranteed under federal law.

141. Plaintiff LARY has been damaged by the illegal conduct of Defendants.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff demands judgment against Defendants in an amount to be determined at the time of trial, plus interests, including but not limited to all emotional distress and economic damages, punitive damages, liquidated damages, attorney's fees, costs, disbursements of action; and for such other relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury an all issues to be tried.

Dated: April 20, 2021
     Miami, Florida

                                  Respectfully submitted,

                                  DEREK SMITH LAW GROUP, PLLC
                                  *Attorneys for Plaintiff*

                                  /s/
                                  Lauren Tobin, Esq.
                                  Florida Bar No. 1024850
                                  Lauren@dereksmithlaw.com
                                  701 Brickell Avenue, Suite 1310
                                  Miami, FL 33131
                                  Tel: (305) 946-1884
                                  Fax: (305) 503-6741
                                  lauren@dereksmithlaw.com